TAYLOR, J.
This appeal concerns punitive damages awarded for a defective Jaguar automobile purchased by the plaintiff, Benjamin Fig-gie, from the defendant, Belle Glade Chevrolet Cadillac Buick Pontiac Oldsmobile, Inc. (Belle Glade). Belle Glade appeals the trial court’s final judgment awarding the plaintiff $11,472.50 in compensatory damages for fraud and $100,000 in punitive damages. Plaintiff cross-appeals the court’s refusal to apply a multiplier to his attorney’s fee award. Because we reverse the punitive award due to improper jury instructions, the cross-appeal is rendered moot.
On January 13, 2005, plaintiff test-drove a 1998 Jaguar at Belle Glade. The car had 45,000 miles on it, and the salesperson told him that the ear had been maintained and everything was in working order. Plaintiff decided to buy the car. He obtained a loan and paid $10,000 to a broker for Members Auto Lease, Inc., which transferred the money to Belle Glade.
When plaintiff contacted the Belle Glade salesperson to arrange to pick up the car, he was told that he could not pick it up for a week. Later, he was told that the car was locked in the service department. Plaintiff went to Belle Glade and discovered that between the time of his test drive and the time he purchased the car, the engine had blown. In addition, the odometer had over 2,000 more miles on it. Plaintiff demanded return of his $10,000, but Belle Glade refused to refund his money.
Plaintiff filed a complaint against Belle Glade, which, after a few amendments, alleged civil theft, conversion, negligence, breach of contract, violation of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and asserted a claim for fraud and punitive damages.
In anticipation of the defendant’s “low net worth defense” to its punitive damages claim, plaintiff sought financial discovery from the defendant through requests for production, interrogatories, and other means. Responses were due within 30 days. After the defendant failed to timely respond or object to the discovery requests, plaintiff moved to compel discovery. The defendant filed a motion for a protective order as to discovery relating to punitive damages. Plaintiff filed another motion to compel such discovery.
The trial court entered an agreed order granting plaintiffs motion to compel and ordering defendant to provide discovery by a certain date. After the time passed, plaintiff moved for sanctions against the defendant for failing to follow the court’s order and timely provide discovery. The court granted plaintiffs motion for sanctions and ordered that Belle Glade produce the remaining discovery due under the agreed order. It warned that failure to comply could result in a default judgment on liability and/or other sanctions.
Plaintiff filed several more motions to compel and for sanctions regarding the outstanding discovery. The defendant *994 provided tax returns and limited accounting information but failed to produce all the documents plaintiff sought. Ultimately, after a hearing on plaintiffs motion for default, the trial court entered an order finding that “Belle Glade has demonstrated contumacious disregard for this Court’s orders by deliberately refusing to produce documents despite four (4) prior orders compelling it to do so.” The court entered default judgment against Belle Glade as to all counts and found Belle Glade was prohibited from asserting a low net worth defense in response to plaintiffs punitive damages claim.
However, upon Belle Glade’s motion for rehearing on the court’s order of default, the trial court vacated the default and granted Belle Glade an evidentiary hearing. After the hearing, the court entered an order finding there was “no showing that [Belle Glade] made a good faith effort to comport with its discovery obligations herein, or to obey the numerous Court Orders entered in repeated attempts to permit [Plaintiff] to obtain discovery herein.... This Court has previously found, and continues to find, that [Belle Glade] was willfully disobedient of this Court’s Orders; that finding has not been refuted by the testimony and evidence provided at the latest hearing.” The court re-entered its prior judgment of default. It stated, “[e]ven if some documentation had been belatedly furnished as represented by [Belle Glade], [Belle Glade’s] demonstrable repeated and serious willful refusals to comply with this Court’s Orders, amounting to deliberate and contumacious disregard of this Court’s authority, remain proven, militating against vacating the default previously entered.” Further, the court indicated that this failure to obey was not the fault of counsel, but the intentional behavior of Belle Glade, and that the recent hearing only strengthened this finding. The court entered a default as a sanction. It struck Belle Glade’s pleadings and defenses and prohibited Belle Glade from asserting a low net worth defense in response to plaintiffs punitive damages claim.
Plaintiff then filed a motion for summary judgment. The court granted the motion and entered an order that plaintiff was entitled to compensatory damages of $10,000 under each theory that he had pled, interest on the new car loan of $1,472.50, plus treble damages under Florida’s civil theft statute. Plaintiffs compensatory damages thus totaled $31,472.50.[1] The case went to jury trial only on punitive damages for fraud.
At trial, the court prohibited Belle Glade from presenting evidence of its low net worth and, further, instructed the jury as follows:
Defendant Belle Glade Chevrolet acted with the criminal intent to purposely deprive plaintiff Benjamin Figgie of his money.
The court has determined and now instructs you, as a matter of law, that defendant Belle Glade Chevrolet is liable to plaintiff Benjamin Figgie for civil theft in the amount of $10,000, plus interest in the amount of $1,472.50, for a total compensatory damages award of $11,472.50.
[[Image here]]
The court has determined and instructs you, as a matter of law, that defendant Belle Glade Chevrolet is liable to plaintiff Benjamin Figgie on his claim *995 for conversion in the amount of $10,000, plus interest in the amount of $1,472.50, for a total compensatory damage award of $11,472.50.
[[Image here]]
While the vehicle was in the sole possession and control of defendant Belle Glade Chevrolet defendant Belle Glade Chevrolet had a duty to take care of the vehicle and ensure it was kept in proper working condition;
Defendant Belle Glade Chevrolet breached this duty and then lied to plaintiff Benjamin Figgie about the problems with the vehicle; and
Defendant Belle Glade Chevrolet’s breach of its duty to take care of the vehicle is the proximate cause of plaintiff Benjamin Figgie’s damages.
[[Image here]]
The court has determined and instructs you, as a matter of law, that defendant Belle Glade Chevrolet is liable to plaintiff Benjamin Figgie on his claim for negligence in the amount of $10,000, plus interest in the amount of $1,472.50, for a total compensatory damage award of $11,472.50.
[[Image here]]
As a direct and proximate result of the above-described acts defendant Belle Glade Chevrolet has engaged in the unlawful method of competition, unconscionable acts or practices and unfair or deceptive acts or practices in the conduct of trade or commerce, in violation of Florida Statute Section 501.204(1); and
As a direct and proximate result of the violation of the Florida Deceptive & Unfair Trade Practices Act plaintiff Benjamin Figgie has been damaged.
The court has determined and instructs you, as a matter of law, that defendant Belle Glade Chevrolet is liable to plaintiff Benjamin Figgie on his claim for violation of the Florida Deceptive & Unfair Trade Practices Act in the amount of $10,000, plus interest in the amount of $1,472.50, for a total compensatory damages award of $11,472.50.
[[Image here]]
On plaintiff Benjamin Figgie’s claim against defendant Belle Glade Chevrolet for fraud you are instructed that:
Despite knowing that the vehicle was damaged, the defendant Belle Glade Chevrolet misrepresented the condition of the vehicle or concealed these facts from plaintiff Benjamin Figgie to induce him to purchase the vehicle;
Such misrepresentations and/or con-cealments were made knowingly or recklessly without and without belief in their truths;
[[Image here]]
The court has determined and instructs you, as a matter of law, that defendant Belle Glade Chevrolet is liable to plaintiff Benjamin Figgie on his claim of fraud in the amount of $10,000, plus interest in the amount of $1,472.50, for a total, I’m sorry, total compensatory damage award of $11,472.50.
Although the court has determined that, as a matter of law, plaintiff Benjamin Figgie has prevailed and is entitled to compensatory damages on each of the six claims that he brings, each compensatory damage award is mutually exclusive of each other compensatory damage award such that plaintiff Benjamin Fig-gie’s damage award is singular and not cumulative; that is, plaintiff Benjamin Figgie is entitled to one, and only one, compensatory damage award.
Although it has been established that defendant Belle Glade Chevrolet committed acts for which an award of punitive damages is an available remedy, whether to award punitive damages to *996 plaintiff Benjamin Figgie is an issue for you to decide, based upon your assessment of the circumstances of this case.
[[Image here]]
In determining the amount of punitive damages, if any, to be assessed as punishment and as a deterrent to others, you should decide any factual issues by the greater weight of the evidence. Greater weight of the evidence means the more persuasive and convincing force and effect of the entire evidence in the case. You should consider the nature, extent and degree of defendant Belle Glade Chevrolet’s misconduct and the related circumstances, including whether the wrongful conduct was motivated solely by unreasonable financial gain.
You may, in your discretion, decline to assess punitive damages or to assess only a nominal amount.
The jury returned a verdict of $100,000 in punitive damages for plaintiff. On the verdict form it answered that Belle Glade had a specific intent to harm plaintiff and that its conduct did in fact harm plaintiff. It answered that Belle Glade’s conduct was not motivated solely by unreasonable financial gain.
Plaintiff filed a motion for attorney’s fees and costs, alleging entitlement under the civil theft statute and FDUTPA, and under the statute governing proposals for settlement.[2] The motion also requested a multiplier of up to 2.5. After a hearing on attorney’s fees, the court decided not to apply a multiplier.
The court entered final judgment awarding plaintiff $11,472.50 in compensatory damages for fraud and $100,000 in punitive damages. It determined that plaintiff was the prevailing party and awarded him $10,932.56 in costs and $179,472.50 in attorney’s fees. Belle Glade appealed the final judgment. Plaintiff cross-appealed the trial court’s ruling against a multiplier.
Belle Glade argues that the trial court abused its discretion in imposing a default as a sanction for discovery violations and denying it the right to produce evidence of its net worth at the punitive damages trial. Belle Glade also argues that the trial court abused its discretion in instructing the jury on punitive damages. Specifically, it argues that the jury instructions invaded the province of the jury to decide entitlement to punitive damages by unnecessarily characterizing its conduct. Belle Glade complains that the instructions improperly informed the jury that it had committed civil theft and fraud, lied, acted unconscionably and with criminal intent, and recklessly made misrepresentations.
Sanctions imposed pursuant to Florida Rule of Civil Procedure 1.380 are reviewed under an abuse of discretion standard. Nationwide Lift Trucks, Inc. v. Smith, 832 So.2d 824, 826 (Fla. 4th DCA 2002). A trial court does not abuse its discretion in imposing the severe sanctions of striking pleadings and entering a default where evidence shows deliberate and contumacious disregard of the court’s discovery orders. Mercer v. Raine, 443 So.2d 944, 946 (Fla.1983). In this case, we find no abuse of discretion in the trial court’s decision to enter a default, because there exists ample record support for the court’s express findings regarding Belle Glade’s ongoing pattern of willful disregard of the court’s discovery orders.
Further, because Belle Glade improperly withheld substantial punitive damages net worth information requested by plaintiff, we find no error in the trial court’s disallowance of the “low net worth” defense at trial as a discovery sanction. The failure to produce documents justifies the striking of a claim or defense to which *997 the documents pertain. Fla. R. Civ. P. 1.380(b)(2)(B) (2007). See Nationwide Lift Trucks, Inc., 832 So.2d at 825 (stating that the destruction of relevant evidence may justify striking a specific defense).
We face a more difficult question, however, on the issue of jury instructions. Belle Glade argues that the jury instructions on punitive damages invaded the province of the jury and unnecessarily characterized its conduct by telling the jury that it had committed civil theft and fraud, lied, acted unconscionably and with criminal intent, and recklessly made misrepresentations. These instructions, according to Belle Glade, tainted the jury’s decision-making on punitive damages.
 In formulating jury instructions, the trial court is accorded broad discretion, and “its decision should not be reversed unless the error complained of resulted in a miscarriage of justice or the jury instructions were reasonably calculated to confuse or mislead the jury.” Chevron U.S.A., Inc. v. Forbes, 783 So.2d 1215, 1218 (Fla. 4th DCA 2001) (citing Johnson v. State, 747 So.2d 436 (Fla. 4th DCA 1999)). Further, “ ‘the court’s decision regarding the charge to the jury is reviewed with a presumption of correctness on appeal.’” Carpenter v. State, 785 So.2d 1182, 1200 (Fla.2001) (quoting James v. State, 695 So.2d 1229, 1236 (Fla.1997)).
In Humana Health Insurance Co. of Florida, Inc. v. Chipps, 802 So.2d 492, 495-96 (Fla. 4th DCA 2001), we reversed an award of punitive damages because “the jury instructions invaded the province of the jury by characterizing the conduct of the defendants.” As in this case, a default judgment had been entered against the defendant as a sanction for discovery violations, and liability for both compensatory damages and punitive damages on the fraud count was thereby established.[3] Id. at 494. At the trial on punitive damages, the court told the jury that “Humana’s conduct was ‘so gross and flagrant as to show a reckless disregard of human life or the safety of persons exposed to the effects of its conduct,’ ” and that “Humana’s conduct ‘showed such an entire lack of care that Humana must have wantonly and recklessly disregarded the safety and welfare of the public.’ ” Id. at 496. Further, the court failed to instruct the jury that it had the discretion to decline to award punitive damages. Id.
We reversed the $78.5 million punitive damages award against Humana, explaining that “[t]o assess punitive damages, a jury must evaluate the degree of ‘malice, wantonness, oppression, or outrage’ demonstrated by the evidence in the case.... While there is overlap between the issues of entitlement to punitive damages and the amount of such damages to be awarded, care should be taken to let the jury arrive at its own decision regarding the egregiousness of the defendant’s conduct.” Id. We concluded that the jury instruction given in Chipps interfered with the jury’s fact-finding function by characterizing and summarizing the evidence. Id.
Likewise, in Nordyne, Inc. v. Florida Mobile Home Supply, Inc., 625 So.2d 1283, 1289 (Fla. 1st DCA 1993), although the First District Court of Appeal upheld a new trial on punitive damages as a sanction against the defendant for discovery violations, the court cautioned the trial court on remand to fashion jury instructions that avoid prejudicing the jury’s consideration of the nature, extent, and degree of the defendant’s misconduct. The court advised that, after giving the appropriate jury instruction, the trial court *998 “should instruct the jury that it has already been established that Nordyne committed acts for which an award of punitive damages is an available remedy, and that the jury is not to concern itself with that issue.” Id. In addition, the First District suggested telling the jury that whether to award punitive damages is an issue for the jury to decide, based on its assessment of the circumstances of this case, and that punitive damages are designed to act as punishment and as a deterrent to others. Id.
Thus, as Chipps and Nordyne make clear, even a sanctioned defendant must be permitted to contest the nature and extent of its wrongdoing in the punitive-damages phase of the trial. Despite litigation misconduct, the jury must be allowed to reach “its own decision regarding the egregiousness of the defendant’s conduct.” Chipps, 802 So.2d at 496. Although the trial court in this case did instruct the jury that it could decline to award punitive damages, it told the jury that it must accept that Belle Glade acted with criminal intent to deprive plaintiff of his money; engaged in unlawful, unconscionable, unfair or deceptive conduct; and made knowing or reckless misrepresentations. While it is true that the torts of civil theft, fraud, conversion, and deceptive and unfair trade practices contain these elements, and that these intentional bad acts were deemed admitted by Belle Glade’s default, the parties agreed that punitive damages were award-able only on the fraud claim; thus, reading the complaint’s entire allegations to the jury and telling them to accept those facts as true may have interfered with the jury’s ability to independently determine the egregiousness of Belle Glade’s conduct.
Section 768.72(2), Florida Statutes (2009) (emphasis added), provides that “[a] defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence.” Here, factual findings that were binding as to Belle Glade’s default liability for various tort claims were impermissibly made binding on disputed issues relevant to the jury’s evaluation of the degree of “ ‘malice, wantonness, oppression, or outrage’ ” for punitive damages purposes. See Chipps, 802 So.2d at 496. Following Nordyne’s suggestion to simply tell the jury that the claims had already been proven by default and that they were not to concern themselves with those issues would have better ensured that the jury would arrive at its own decision on punitive damages, “based upon [its] assessment of the circumstances of this case.” See Nordyne, 625 So.2d at 1289. We conclude that the instructions given in this case unnecessarily summarized and highlighted the egregiousness of Belle Glade’s conduct and thus invaded the province of the jury to decide punitive damages.
In sum, we hold that the trial court did not abuse its discretion in entering a default against Belle Glade and prohibiting it from presenting low net worth evidence at the punitive damages trial as sanctions for its discovery violations. However, because we conclude that the trial court abused its discretion in instructing the jury on punitive damages, we reverse the punitive damages award and remand for a new trial on punitive damages. Accordingly, we need not address Belle Glade’s arguments regarding the amount of the punitive damage award or the plaintiffs arguments on cross-appeal concerning the trial court’s denial of a multiplier.

Reversed and Remanded.

WARNER and MAY, JJ., concur.

. The parties later agreed that plaintiff could not receive a trebled damages award under section 772.11, Florida Statutes, because such damages would impermissibly overlap with the jury’s award of punitive damages. The final judgment thus granted a compensatory award of $11,472.50.

. The settlement offer was $7,500; plaintiff’s award was in excess of 125% of the proposal.

. We noted that a default on entitlement to punitive damages was unusual. Chipps, 802 So.2d at 496.